UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID JAMES MCNAMARA,

        Plaintiff,

v.                                        Case No. 25-cv-0579-bhl

JULIE R., et al.,

        Defendants.

## SCREENING ORDER

On April 23, 2025, David James McNamara, proceeding without an attorney, filed a complaint against Sheboygan County and the State of Wisconsin, along with a motion for leave to proceed without prepayment of the filing fee, or *in forma pauperis* (IFP). (ECF Nos. 1 & 2.) On April 29, 2025, the Court denied McNamara's IFP motion and dismissed his complaint. (ECF No. 4.) The Court explained that, if McNamara wished to proceed with his lawsuit, he needed to file an amended complaint and pay the filing fee. (*Id.*) McNamara then paid the filing fee and filed both an Amended Complaint and, on June 3, 2025, a "Corrected" Amended Complaint. (ECF Nos. 6 &7.) In his revised pleading, McNamara asserts claims against Julie R., Jane Doe, L. Edward Stengel, John Doe I, Jim Doyle, Tommy Thompson, and John Doe II. (ECF No. 7.) The matter is now before the Court for the screening of the "Corrected" Amended Complaint.

### LEGAL STANDARD

In screening a *pro se* complaint, the Court applies the liberal pleading standards embraced by the Federal Rules of Civil Procedure. To survive screening, the complaint must comply with the Federal Rules and state at least plausible claims for which relief may be granted. To state a cognizable claim, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted). If the complaint fails to allege sufficient facts to state a claim on which relief may be granted, it must be dismissed. *See Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1018 (7th Cir. 2013).

## ALLEGATIONS

McNamara's complaint revolves around child support payments and what he contends are unfair court proceedings arising from his failure to make those payments. He alleges he was discharged from the Navy in 1995 due to his disability, Myofascial Pain Syndrome. (ECF No. 7 at 2.) McNamara began working with child support services in the summer of 1995 to determine his payments and was informed by "Julie R." that he need not take further action and that she could make modifications to his child support. (*Id.*)

In January 1996, McNamara tried to reach out again to determine how much he owed after receiving a check from vocational rehabilitation. (*Id.* at 3.) This led to a game of phone-tag where he was consistently unable to reach Julie, or the computer system was down, and therefore McNamara was continually told to call back. (*Id.*) In May 1996, money was taken out of his tax return (presumably for owed child support). (*Id.*) McNamara continued trying to work out his child support obligations to no avail. (*Id.*) In August 1996, an arrest warrant was issued, and McNamara ended up in Sheboygan County Court. (*Id.*) A hearing was held in September or October 1996, when the Court informed McNamara that he owed $10,000 in child support, while McNamara maintains that he only owed $1,800. (*Id.*) During the hearing, the judge said that

McNamara was guilty until proven innocent and the prosecutors accused McNamara of faking his disability. (*Id.*) McNamara was jailed for three weeks before being released. (*Id.* at 4.)

Court hearings continued until 1999, when McNamara "went out west." (*Id.*) In 2001, Wisconsin issued a warrant of arrest for unpaid child support, though he was paying $750 a month in child support. (*Id.*) McNamara paid the $8,000 owed to be released, then was told he needed to pay an additional $300 or Wisconsin would reissue the warrant. (*Id.*) In 2003, Sheboygan County Court raised McNamara's child support to $1,000 per month. (*Id.*) McNamara hired an attorney to file for a new hearing, but the attorney never did, and the attorney told McNamara to come back to Wisconsin. (*Id.*) Wisconsin issued a warrant for arrest, and McNamara was arrested. (*Id.* at 5.) In court, the judge accused McNamara of faking his disability and "defer[ed] the sentencing to the criminal court." (*Id.*) McNamara was jailed for ten months when a judge from the criminal court sentenced him to five months in prison, with no child support payments due during his prison sentence or for six months after, and payments of $750 per month thereafter. (*Id.*) Despite the order, child support kept charging McNamara $1,000 per month throughout McNamara's prison sentence. (*Id.*)

In 2010, McNamara was in New Mexico when he was jailed for a Wisconsin arrest warrant. (*Id.*) He was shuttled back and forth between New Mexico and Sheboygan until August 2011. (*Id.*) The entire time, McNamara was charged $1,000 per month in child support. (*Id.*) His probation officer eventually got the amount lowered to $50 per month, but at that point, McNamara owed more than $200,000 in child support. (*Id.*) In 2024, Sheboygan again took McNamara to court and "requested additional proof," asking McNamara to prove he is disabled. (*Id.*) He was again jailed in 2025. (*Id.*)

## ANALYSIS

McNamara does not invoke any particular statute in his pleadings, but it appears that he is attempting to bring claims for civil rights violations against Julie R., Jane Doe, L. Edward Stengel, John Doe I, Jim Doyle, Tommy Thompson, and John Doe II under 42 U.S.C. §1983. To state a claim under Section 1983, McNamara must identify a person or persons acting under color of law who violated his federal rights. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1519–20 (7th Cir. 1990). McNamara's claims fail for at least three reasons.

In his complaint, McNamara indicates that Stengel and John Doe I are judges. (ECF No. 7 at 2.) He also indicates that John Doe II is a prosecuting attorney. (*Id.*) But judges and

prosecutors receive immunity when acting in their official roles and, from the face of McNamara's complaint, these individuals were acting in their official roles. *See Coleman v. Dunlap*, 695 F.3d 650, 652 (7th Cir. 2012) (providing that judges cannot be sued when acting in their official roles); *see also Imbler v. Pachtman*, 424 U.S. 409, 422–24 (1976) (providing that prosecutors cannot be sued when acting in their official roles). Accordingly, McNamara's claims against Stengel and John Does I and II must be dismissed.

The remaining Defendants are Julie R. and Jane Doe (state child support employees that held telephone conversations with McNamara in 1995 and 1996) and the Wisconsin state officers, Jim Doyle (the former Attorney General) and Tommy Thompson (the former Governor). (ECF No. 7 at 2.) McNamara's factual allegations related to these defendants all took place in 1996. (*Id.*) Any claims related to those long-ago actions are time-barred. At that time of those events, the statute of limitations for Section 1983 actions in Wisconsin was six years. *See D'Acquisto v. Love*, No. 20-C-1034, 2020 WL 5982895, at *1 (E.D. Wis. Oct. 8, 2020). Accordingly, McNamara needed to bring claims against these individuals no later than 2002. McNamara's 2025 filing is thus more than two decades too late.

Allowing McNamara to proceed would create other issues as well. Federal courts cannot adjudicate a claim against someone charged and convicted of criminal activity, if a decision in that person's favor would "necessarily imply the invalidity of his conviction or sentence," unless and until the plaintiff shows that his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994). To the extent McNamara is seeking relief from his prior convictions and back payments ordered, this Court cannot intervene: McNamara must go through the state system to litigate such issues.

McNamara also indicates unhappiness with his 2024 and 2025 criminal proceedings. It is unclear how these proceedings relate to his child support claims and who he is attempting to sue because of the proceedings. It does not matter, because this Court would be required to refrain from interfering in any event. Federal courts generally abstain from hearing cases that would disrupt ongoing state criminal proceedings. *Younger v. Harris*, 401 U.S. 37, 43–45 (1971); *see also J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021). Exceptions to *Younger* are "very narrow" and must create "an extraordinarily pressing need for immediate federal equitable relief."

*Arkebauer v. Kiley*, 985 F.2d 1351, 1358–59 (7th Cir. 1993) (quoting *Kugler v. Helfant*, 421 U.S. 117, 125 (1975)). Given the sparse factual allegations surrounding McNamara's current court proceedings, the Court cannot say that there is an extraordinarily pressing need for immediate federal relief and will therefore dismiss any claims McNamara is attempting to bring surrounding his 2024 and 2025 criminal proceedings.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that McNamara's Corrected Complaint, ECF No. 7, is **DISMISSED**. The Clerk of Court is instructed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin on June 12, 2025.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
